UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 17-cv-61204-GAYLES

LIST INDUSTRIES, INC.,
an Illinois Corporation,

    Plaintiff,
v.

WELLS FARGO BANK, N.A.,

    Defendant.
_____/

## ORDER

**THIS CAUSE** comes before the Court upon Defendant Wells Fargo Bank N.A.'s Motion to Dismiss Amended Complaint (the "Motion"). [ECF No. 19]. The Court has reviewed the Motion, and the record, and is otherwise fully advised. For the reasons that follow, the Motion is **GRANTED in part and DENIED in part**. Counts I, II, IV, and V shall be dismissed for the reasons set forth below. The Motion is denied as to Count III.

## BACKGROUND

Plaintiff, List Industries, Inc. ("Plaintiff"), is a corporation engaged in the design and manufacture of various lockers, cabinets, gates, and shelving units. In or about 1997, List hired Salvatore Ciaramitaro ("Sal")[1] to serve as its assistant comptroller. Sal was tasked with performing accounting functions, managing List's finances and banking needs, and overseeing payments made and received between List and its vendors and suppliers. Sal was also charged with handling checks and making bank deposits into various List bank accounts, including accounts List maintained with Defendant, Wells Fargo Bank, N.A ("Defendant").

---

[1] The parties both refer to Mr. Ciarmitaro as "Sal" in their pleadings. For ease of reference, the Court shall as well.

Plaintiff alleges that in or around April 2006, Sal opened several business checking accounts with Wachovia Bank[2] using shell companies that had similar names to List (i.e., "L.I. Industries, Inc." and "L.I. Worldwide Industries, Inc.") for purposes of indicating that they were authentic List accounts. Plaintiff contends that Sal engaged in a fraudulent scheme whereby he diverted checks payable to List ("List Payee Checks") to his personal business accounts at Wells Fargo and wrote checks from legitimate List bank accounts ("List Maker Checks") to third parties, forged endorsements on those checks, and then deposited the checks into his personal business accounts at Wells Fargo.

Plaintiff alleges that Defendant negligently enabled Sal's fraudulent scheme to succeed by, *inter alia*, making payments and crediting the checks into Sal's business accounts, failing to notice the forged endorsements and accepting the checks, failing to determine whether the checks were endorsed with an authentic signature belonging to an authorized List representative, and failing to inquire as to Sal's authority to receive payment on the checks. Plaintiff's Amended Complaint [ECF No. 14] asserts the following claims: Count I – U.C.C. Article 3 Conversion (Fla. Stat. § 673.4201); Count II – Violation of U.C.C. Article 3 (Fla. Stat. § 674.4031); Count III – Violation of U.C.C. Article 4 (Fla. Stat. § 674.401); Count IV – Negligence; and Count V – Common Law Conversion. Defendant has moved to dismiss the Amended Complaint, arguing that the Plaintiff's claims are barred by agreements between the parties, and the applicable statute of limitations; that Plaintiff's claims are preempted by the Uniform Commercial Code ("UCC"); and that Plaintiff has failed to state a claim upon which relief can be granted. [ECF No. 19].

## **LEGAL STANDARD**

---

[2] Following a merger, Wells Fargo became the successor-in-interest to Wachovia Bank.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although this pleading standard "does not require 'detailed factual allegations,' . . . it demands more than unadorned, the defendant–unlawfully–harmed me accusations." *Id.* (alteration added) (quoting *Twombly*, 550 U.S. at 555).

Pleadings must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation omitted). Indeed, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 556). To meet this "plausibility standard," a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (alteration added) (citing *Twombly*, 550 U.S. at 556). When reviewing a motion to dismiss, a court must construe the complaint in the light most favorable to the plaintiff and take the factual allegations therein as true. *See Brooks v. Blue Cross & Blue Shield of Fla. Inc.,* 116 F.3d 1364, 1369 (11th Cir. 1997).

## ANALYSIS

**I. Consideration of Documents Attached to the Motion to Dismiss (Counts II, III, IV, and V)**

Defendant contends that Counts II, III, IV, and V, to the extent they bear upon checks written on List's Accounts, are barred by a contract between the parties. Although analysis of a Rule 12(b)(6) motion is primarily limited to the allegations in the complaint and its attachments, "a document outside the four corners of the complaint may still be considered if it is central to the plaintiff's claims and is *undisputed* in terms of authenticity." *Maxcess, Inc. v. Lucent Techs., Inc.*, 433 F.3d 1337, 1343 n.3 (11th Cir. 2005) (emphasis added). Here, Defendant alleges

Plaintiff's claims are barred by a Business Account Agreement and Deposit Account Application/Signature Cards that it attached to its Motion to Dismiss. Plaintiff, however, disputes the authenticity of the documents arguing that they are unauthenticated and appear to be forgeries. Plaintiff's dispute as to the authenticity of these documents raises factual issues that cannot be resolved at the motion to dismiss stage. Accordingly, Defendant's Motion to Dismiss on these grounds is denied.

### II. Statute of Limitations and Tolling (all Counts)

Statutes of limitations exist "to prevent the litigation of stale claims—claims as to which the defense may be hampered because of passage of time, lost evidence, faded memories, or disappearing witnesses. . . ." *Justice v. United States*, 6 F.3d 1474, 1482 (11th Cir. 1993). Generally, a question of whether the statute of limitations applies is more properly raised as an affirmative defense in an answer rather than in a motion to dismiss. *Sec'y of Labor v. Labbe*, 319 F. App'x 761, 764 (11th Cir. 2008). However, where the "allegations [of the Complaint], on their face, show that an affirmative defense bars recovery on the claim," dismissal is appropriate under Rule 12(b)(6). *Cotton v. Jenne*, 326 F.3d 1352, 1357 (11th Cir. 2003). Here, the applicable limitations period is the four (4) year period prior to Plaintiff commencing this action on May 16, 2017. *See* Fla. Stat. § 95.11(3).

It is undisputed that, without tolling, all of Plaintiff's claims based on checks that were deposited prior to May 16, 2013, are time-barred. *See* Fla. Stat. § 95.11(3). However, equitable tolling is a doctrine under which a plaintiff may sue after the statutory time period has expired if it has been prevented from doing so due to inequitable circumstances. *Spadaro v. City of Miramar*, 855 F. Supp. 2d 1317, 1334 (S.D. Fla. 2012); *Machules v. Dep't of Admin.*, 523 So. 2d 1132, 1134 (Fla. 1988) (stating that the doctrine of equitable tolling is generally applied when a party has been "misled or lulled into inaction, has in some extraordinary way been prevented

from asserting his rights, or has timely asserted his rights mistakenly in the wrong forum."). In the Eleventh Circuit, "equitable tolling may be available when there is no misconduct on behalf of the defendants and may delay the running of the limitations period based on the plaintiff's blameless ignorance and the lack of prejudice to the defendant." *Aruanno v. Martin County Sheriff*, 343 F. App'x 535, 537 (11th Cir. 2009) (internal quotations and citations omitted); *Arce v. Garcia*, 434 F.3d 1254, 1261 (11th Cir. 2006) ("Equitable tolling is appropriate when a movant untimely files because of *extraordinary circumstances* that are both beyond his control and unavoidable even with diligence.").

Here, Plaintiff argues that equitable tolling should apply to the checks deposited more than four years prior to filing suit because, as alleged in the Amended Complaint, Plaintiff had no way to uncover Sal's scheme "until shortly before the filing of the initial complaint, even if investigated with reasonable diligence." *See* [ECF No. 14, ¶ 12]. Defendant argues that Plaintiff is not entitled to equitable tolling because there are no allegations that Defendant affirmatively misled Plaintiff, lulled Plaintiff into inaction, or otherwise actively caused Plaintiff to forebear filing suit within the limitations period. However, contrary to Defendant's assertion, equitable tolling does not require that Plaintiff allege that Defendant engaged in any deception or malfeasance. *See Aruanno,* 343 F. App'x at 537 (noting that equitable tolling does not require misconduct on behalf of the defendant); *Maale v. Kirchgessner*, No. 08-80131, 2010 WL 11506072, at *6 (S.D. Fla. June 21, 2010) ("Active deception or misconduct on the part of the defendants is not required to apply equitable tolling principles.").

The Court finds that the Amended Complaint plausibly alleges that Plaintiff was prevented from uncovering Sal's fraudulent scheme sooner because Sal designed the scheme to avoid detection by, among other things, having the cancelled checks and shell company account statements sent to addresses that were under his exclusive control. *See* [ECF No. 14, ¶ 12].

5

Because the Court finds that equitable tolling *may* apply to Plaintiff's claims, it declines to find that the statute of limitations has expired at this time. *In re Chiquita Brands Int'l, Inc. Alien Tort Statute & S'holder Derivative Litig.*, 190 F. Supp. 3d 1100, 1116 (S.D. Fla. 2016) ("Because the complaints allege facts which might justify an equitable tolling of the statute of limitations through 2007, there is no basis for dismissing the claims against the Individual Defendants on limitation grounds on the face of the pleadings."); *Spadaro*, 855 F. Supp. 2d at 1335 (declining to dismiss claims as time-barred because the amended complaint alleged that the statute of limitations should be equitably tolled due to fraudulent concealment); *Maale v. Kirchgessner*, 2010 WL 11506072, at *6 (declining to decide on motion to dismiss whether statute of limitations barred claims because the allegations in the complaint raised a "genuine issue as to whether equitable tolling principles would apply to such claims"); *Labbe*, 319 F. App'x at 764 (reversing dismissal on limitations finding that the Court could not conclude beyond a doubt that the Secretary could prove no set of facts that toll the statute).

### III. UCC Preemption of Common Law Claims as to List Maker Checks

#### a. Negligence (Count IV)

Defendant argues that the UCC preempts Plaintiff's common law negligence claim, Count IV, as to the List Maker Checks. Article 4A of the UCC, codified in Florida Statutes Section 670.102, *et seq.*, instituted a uniform mechanism to address the particular issues raised by funds transfers. Fla. Stat. § 670.102 (cmt.); *Capten Trading Ltd. v. Banco Santander Int'l*, 17-20264-CIV, 2018 WL 1558272, at *3 (S.D. Fla. Mar. 29, 2018). Because it preempted[3] certain common law claims, Article 4A now represents the "exclusive means of determining the rights, duties and liabilities of the affected parties *in any situation covered by particular provisions of*

---

[3] Florida courts used the term "displacement" to describe the interaction between the UCC, as codified by Florida's legislature, and common law. *See Corfan Banco Asuncion Paraguay v. Ocean Bank*, 715 So. 2d 967, 970–71 (Fla. 3d Dist. Ct. App. 1998). The Eleventh Circuit uses the term preemption. *See Regions Bank*, 345 F.3d at 1274. Accordingly, this Court uses the term "preemption."

[Article 4A]." *Regions Bank v. Provident Bank Inc.*, 345 F.3d 1267, 1274 (11th Cir. 2003) (citing U.C.C. § 4A-102 cmt.) (emphasis in original); *see also Capten*, 2018 WL 1558272, at *4 (negligence claims premised *solely* on unauthorized transfers of funds fall within the scope of Article 4A and are preempted). But Article 4A "is not the exclusive means by which a plaintiff can seek to redress an alleged harm arising from a funds transfer." *Id.* at 1275. Rather, the Article precludes parties from seeking relief using "principles of law or equity outside of Article 4A" when doing so would "create rights, duties and liabilities *inconsistent* with those stated in [the] Article." *Id.* (conversion theory was not inconsistent with Article 4A because it alleged that the defendant-bank knew or should have known that "the funds were obtained illegally"); *see also Gilson v. TD Bank, N.A.*, 10-20535-CIV, 2011 WL 294447, at *8 (S.D. Fla. Jan. 27, 2011) (allegations based on a defendant's own "lack of care," wholly independent of any wire transfer, are not preempted by Article 4A). The Court's inquiry is thus limited to whether Plaintiff has alleged common law negligence and conversion claims that are inconsistent with, or not already encompassed by, Article 4A.

*Corfan Banco Asuncion Paraguay v. Ocean Bank*, 715 So. 2d 967, 970–71 (Fla. 3d Dist. Ct. App. 1998), relied on by Defendant, is instructive. There, the defendant "owed [plaintiff] a duty of care . . . to return the funds" following transfer to a non-existent account number—a transfer whose fault was predicated on a typographical error, rather than human malfeasance. *Id.*; *see Gilson*, 2011 WL 294447, at *10 (noting that the error in *Corfan* was "precisely the type of situation firmly contemplated by Article 4A"). The court held that preemption was appropriate where "[t]he duty claimed to have been breached by Ocean Bank in its negligence count is exactly the same duty established and now governed by the statute." *Corfan*, 715 So. 2d at 971. Notably, "Cofran did not involve alleged negligence beyond the scope of the erroneous wire transfer." *Gilson*, 2011 WL 294447, at *10.

7

Here, Plaintiff has alleged that Defendant was negligent in its duties to "act in good faith, observe reasonable commercial standards of fair dealing, exercise ordinary care, [and] adhere to the covenant of good faith and fair dealing." [ECF No. 14, ¶ 9, ¶¶ 27–33]. Plaintiff alleges Defendant breached those duties by failing to notice and stop the laundering, investigate as to whether the checks were authentic, and assure the third party employee's authority to receive the funds. [ECF No. 14, ¶ 9]. Plaintiff does not allege that Defendant was reckless in allowing Sal to open accounts. Defendant counters that Plaintiff's common law negligence claim is preempted by Article 4A, specifically Fla. Stat. Sections 674.401,[4] 673.4131, 673.3011, and 673.4201. [ECF No. 19 at 13]. Section 674.401 governs when a bank may charge a customer's account, stating that "an item is properly payable if it is authorized by the customer and is in accordance with any agreement between the customer and bank." Fla. Stat. Ann. § 674.401(1). Section 673.4131 delineates the obligations of acceptors of a draft. Section 673.3011 governs who is entitled to enforce an instrument. Finally, Section 673.4201 governs conversion of funds.

The Court finds that Plaintiff's negligence claim is preempted by the UCC. Plaintiff has not alleged facts relating to Defendant's lack of care outside of the wire transfers. *See Capten*, 2018 WL 1558272, at *4 (holding that Article 4A preempted negligence common law claim where "all [the claims] rest[ed] on [Plaintiff's] allegations that the Bank mishandled unauthorized wire transfer requests"). Plaintiff's claim rests solely on allegations related to the unauthorized transactions, thus Article 4A preempts Plaintiff's common law negligence claim. *See Anderson v. Branch Banking & Tr. Co.*, 119 F. Supp. 3d 1328, 1356 (S.D. Fla. 2015) (noting that in cases where customer's negligence claims are predicated upon unauthorized transfers, such as forged signatures or improper authorization, such claims are preempted).

---

[4] Defendant acknowledges that its Motion incorrectly cited Section 674.401 as 673.401, which was repealed. [ECF No. 19 at 8].

### b. Conversion (Count V)

The Court also finds that Plaintiff's common law claim for conversion is preempted by the UCC.[5] Plaintiff does not allege that Defendant "knew or should have known" that Sal's actions were fraudulent. *Regions Bank*, 345 F.3d at 1275. Rather, the common law conversion allegations mirror those for conversion under the UCC and contain no additional details with respect to any action of the bank outside of the wire transfers. *See Indus. Park Dev. Corp. v. Chase Bank USA, Nat'l Ass'n*, No. 6:12-cv-736-Orl-36GJK, 2013 WL 12156677, at *4 (M.D. Fla. Mar. 5, 2013) (noting that a claim for conversion based on lack of authorization for withdrawals by a third party is likely governed by Article 4A).

Accordingly, the Court finds that Counts IV and V of the Amended Complaint relating to the List Maker Checks are preempted by the UCC.[6]

### IV. Failure to State a Claim as to All Checks

#### a. Negligence (Count IV)

Defendant also argues that Plaintiff fails to adequately allege negligence as to both List Payee and List Maker checks in Count IV because Defendant did not have a duty to investigate or monitor the allegedly improper transactions. Plaintiff alleges that Defendant negligently breached its duty to "act in good faith, observe reasonable commercial standards of fair dealing, exercise ordinary care, [and] adhere to the covenant of good faith and fair dealing" regarding the checks. [ECF No. 14 ¶ 37]. Plaintiff points to Defendant's failure to "exercise ordinary care" and that it "dealt with the forged endorsements in a way which was not commercially reasonable" as evidence of the breach. *Id.*

---

[5] Plaintiff has indicated that its UCC conversion claim is pled only in the alternative to its common law claim.
[6] Defendant argues that Plaintiff's common law negligence claim for the List Maker Checks is also barred by the independent tort doctrine. [ECF No. 19 at 13]. Because the Court has determined that this claim is preempted by the UCC, the Court declines to decide whether the independent tort doctrine would pose an additional bar.

It is well-established that there is no general duty to investigate or "actively" monitor suspicious banking activity. *Home Fed. Sav. & Loan Ass'n of Hollywood v. Emile*, 216 So. 2d 443, 446 (Fla. 1968); *see also Gevaerts v. TD Bank, N.A.*, 56 F. Supp. 3d 1335, 1337 (S.D. Fla. 2014). Plaintiff has not alleged facts that would permit an inference that the bank had or should have had actual knowledge of the scheme. *Wiand v. Wells Fargo Bank, N.A.*, 86 F. Supp. 3d 1316, 1330 (M.D. Fla. 2015) (finding that where bank operated in good faith and had no control over the deposits and transfers except as to place the funds as instructed, no common law liability for negligence attached). Indeed, Plaintiff has not alleged any facts that would allow this Court to infer that Defendant operated in anything but good faith. *Id.* Therefore, the Plaintiff's claim for common law negligence must be dismissed.

 b. **Conversion (Counts I and V)**

Finally, Defendant offers three reasons why Plaintiff's claims for both UCC and common law claims for conversion, Counts I and V respectively, fail as to all checks: (1) because the funds were not segregated such that they are easily identifiable for return, (2) that a debt payable through the exchange of money typically does not form the basis of a claim for conversion under Florida law, and (3) no independent obligation existed for the bank to maintain or return the specific money used for a deposit.[7] [ECF No. 19 at 19-20].

Defendant is correct that the common law requires "specific money capable of identification" to be the subject of an action for conversion, such that it is "kep[t] intact or deliver[ed] . . . so that such money can be identified." *Belford Trucking Co. v. Zagar*, 243 So. 2d 646, 648 (Fla. 4th Dist. Ct. App. 1970). Money only becomes a proper subject for a conversion claim where there exists "an obligation for the receiver to keep intact or deliver the specific

---

[7] Plaintiff has indicated that Count V is pled only in the alternative to Count I. Because the Court has found that Article 3 preempts the common law claims, the Court addresses whether Plaintiff has properly alleged UCC claims here.

money at issue." *Indus. Park Dev. Corp. v. Am. Exp. Bank, FSB*, 960 F. Supp. 2d 1363, 1366 (M.D. Fla. 2013). In such cases, plaintiffs typically deposit their money into a trust or escrow account, or some similar arrangement "where there is an obligation or fiduciary duty to keep money segregated." *Batlle v. Wachovia Bank, N.A.*, No. 10-21782-CIV, 2011 WL 1085579, at *1 (S.D. Fla. Mar. 21, 2011). Moreover, these principles extend to the statutory requirements of Article 3 of the UCC, codified at Fla. Stat. § 673.4201. *Breig v. Wells Fargo Bank, N.A.*, No. 13-80215-CIV, 2014 WL 806854, at *3-4 (S.D. Fla. Feb. 28, 2014) (noting that plaintiff must demonstrate "specific and identifiable money" to establish a UCC claim for conversion). Plaintiff's contention to the contrary is explicitly contradicted by the case law. [ECF No. 28 at 14].

This Court has yet to identify a single case where lump sum deposits into an account satisfied the factual predicate necessary for conversion. *E.g.*, *Breig*, 2014 WL 806854, at *3–4 (citing cases). Plaintiff has not alleged facts establishing that specific funds capable of identification exist. Neither has Plaintiff alleged facts that establish Defendant owed a fiduciary duty to segregate the funds. Thus, the Court finds that Plaintiff has failed to state a claim under Count V for common law conversion and Count I for conversion under the UCC.

## **CONCLUSION**

Because Plaintiff has failed to allege facts sufficient to support Counts I, II, IV and V, all that remains is Plaintiff's Count III claim under the UCC.[8] The Court thus grants Defendant's Motion to Dismiss in all respects save Count III.

---

[8] Defendant has argued that Count III must be dismissed due to the terms of the parties contract, the statute of limitations, and because Count III is a "customer maker claim[] pursuant to language of the applicable statutes." [ECF No. 19 at 3]. The first two claims are addressed and dispensed with above. Defendant has not cited, nor has the Court found, any authority for its proposition that "customer maker claims" must be dismissed. The Court therefore declines to dismiss Count III.

Based on the foregoing, it is

**ORDERED AND ADJUDGED** that Defendant Wells Fargo's Motion to Dismiss Amended Complaint [ECF No. 19] is **GRANTED in part and DENIED in part:**

a) The motion is GRANTED as to Counts I, II, IV, and V, and those counts are dismissed without prejudice as to all checks;

b) The motion is DENIED as to Count III.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 11th day of September, 2018.

_____
DARRIN P. GAYLES
UNITED STATES DISTRICT JUDGE