# EXHIBIT A

*List Industries, Inc. v. Wells Fargo Bank, N.A.*
Case No. 17-cv-61204-Gayles/Strauss

AO 88A (Rev. 02/14) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| | | |
|---|---|---|
| LIST INDUSTRIES, INC. | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No. 0:17-CV-61204-DPG |
| WELLS FARGO BANK, N.A. | ) | |
| | ) | |
| *Defendant* | ) | |

**SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION**

To: RSM US LLP, CORPORATE REPRESENTATIVE, 505 5TH AVENUE, SUITE 729, DES MOINES, IA 50309

*(Name of person to whom this subpoena is directed)*

☑ *Testimony:* **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:
SEE ATTACHED SCHEDULE A

| Place: Fox Rothschild, LLP, 777 South Flagler Drive, Suite 1700 - West Tower, West Palm Beach, FL 33401 | Date and Time: 2/4/2021 1:30 pm |
|---|---|

The deposition will be recorded by this method: Via Zoom - See Notice Attached

☑ *Production:* You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material: DEPONENT IS DIRECTED TO PRODUCE ON OR BEFORE JANUARY 25, 2021
THOSE ITEMS LISTED ON THE ATTACHED EXHIBIT B AND INCORPORATED HEREIN BY THIS REFERENCE.

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 1/19/2021

*CLERK OF COURT*

OR

/s/ Heather L. Ries, Esq.

*Signature of Clerk or Deputy Clerk*      *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* Wells Fargo Bank, N.A. , who issues or requests this subpoena, are:

Heather L. Ries, 777 S. Flagler Dr., Ste. 1700-West Tower, WPB, FL 33401, 561-804-4419, hries@foxrothschild.com

**Notice to the person who issues or requests this subpoena**

If this subpoena commands the production of documents, electronically stored information, or tangible things before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88A  (Rev.  02/14) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No. 0:17-CV-61204-DPG

# PROOF OF SERVICE

*(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____
on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named individual as follows: _____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88A  (Rev.  02/14) Subpoena to Testify at a Deposition in a Civil Action (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*

  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CASE NO: 0:17-cv-61204-DPG

LIST INDUSTRIES, INC.,
an Illinois Corporation,

      Plaintiff,

v.

WELLS FARGO BANK, N.A.,

      Defendant.
_____/

### RE-NOTICE OF TAKING DEPOSITION DUCES TECUM OF CORPORATE REPRESENTATIVE OF RSM US LLP (CHANGE OF DATE ONLY)

**YOU ARE HEREBY NOTIFIED** that at the date and time listed below at Fox Rothschild LLP, 777 S. Flagler Drive, Suite 1700 – West Tower, West Palm Beach, FL 33401, Defendant, Wells Fargo Bank, N.A. ("Wells Fargo"), in the above-styled case will take the following deposition duces tecum by oral examination for purposes of discovery and for the use as evidence in said cause, or both:

| DEPONENT | DATE/TIME | LOCATION |
|---|---|---|
| **CORPORATE REPRESENTATIVE OF RSM US LLP TO TESTIFY AS TO THE TOPICS IDENTIFIED ON EXHIBIT A**[1] | February 4, 2021 1:30 p.m. | ESQUIRE DEPOSITION SOLUTIONS VIA ZOOM* |

**\*Zoom:**
https://esquiresolutions.zoom.us/j/94991521871?pwd=UDdaWTFuYmtjOXp3S0l5OCtjcG9oUT09

---

[1] Pursuant to Fed. R. Civ. P. 30(b)(6), RSM US LLP shall designate one or more officers, directors, managing agents, or other persons who consent to testify on its behalf and cause that person or those persons to appear at the time and place identified herein to testify about information known or reasonably available to RSM US LLP. RSM US LLP and Wells Fargo Bank, N.A. must confer in good faith about the matters for examination promptly after receipt of this notice.

**Meeting ID:  94991521871**
**Meeting Passcode (if needed):  6368540**
**+1 669 900 6833 or +1 346 248 7799 US Toll**
**International numbers available: https://esquiresolutions.zoom.us/u/ac8AJQYpY8**
**If joining from an H.323/SIP room system:**
**Dial: 162.255.37.11 (US West) or 162.255.36.11 (US East)**

Said deposition will be taken before a notary public or some other officer authorized to administer oaths by statute or the Rules of Court, and a person who is neither a relative, nor employee, nor attorney, nor counsel of any of the parties and who is neither a relative nor employee of such attorney or counsel, and who is not financially interested in the action.

Said deposition to be taken pursuant to the Federal Rules of Civil Procedure and the Local Rules of the United States District Court for the Southern District of Florida in the above-referenced case.  The said oral examinations will continue from hour to hour and from day to day until completed.

Deponent is directed to produce **on or before January 25, 2021**, those items listed on the attached **Exhibit B** and incorporated herein by this reference.

Dated: January 11, 2021

By: __/s/  Heather L. Ries__
Heather L. Ries
Florida Bar Number: 581933
hries@foxrothschild.com
FOX ROTHSCHILD LLP
777 S. Flagler Drive
Suite 1700 West Tower
West Palm Beach, FL 33401
Telephone: (561) 804-4419
Facsimile: (561) 835-9602

*Attorneys for Defendant, Wells Fargo Bank, N.A.*

2

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on this 11th day of January, 2021, a true copy of the foregoing was furnished via E-mail and U.S. Mail to:

Charles H. Lichtman
clichtman@bergersingerman.com
Jeffrey S. Wertman
jwertman@bergersingerman.com
Berger Singerman LLP
350 E Las Olas Blvd, #1000
Fort Lauderdale, FL 33301

By: */s/ Heather L. Ries*
      Heather L. Ries

cc:  Esquire Deposition Solutions

## **DEFINITIONS AND INSTRUCTIONS AS TO EXHIBITS A AND B**

When relevant or when used in the Topics (Exhibit A) or Documents Requested (Exhibit B), refer to the following definitions and/or instructions:

1. Throughout this Request, the singular includes the plural, the masculine includes the feminine and neuter, "and" includes "for," "any" includes "all," and vice versa. The words "include" and "including" shall be construed without limitation.

2. "Documents" or "Records" means any written or graphic matter or other means of preserving thought or expression, and all tangible things from which information can be processed or transcribed, including the originals and all non-identical copies, whether different from the original by reason of any notation made on such copy or otherwise, including, but not limited to, correspondence, memoranda, e-mails notes, messages, letters, telegrams, teletype, telefax bulletins, meetings, or other communications, interoffice and intra-office telephone calls, diaries, chronological data, minutes, books, reports, charts, ledgers, invoices, work-sheets, receipts, returns, computer print-outs, prospectuses, financial statements, schedules, affidavits, contracts, cancelled checks, transcripts, statistics, surveys, magazine or newspaper articles, releases (and any and all drafts, alterations and modifications, changes and amendments of any of the foregoing), graphs or aural records or representations of any kind, including, without limitation photographs, charts, graphs, microfiche, microfilm, video-tape, recordings, motion pictures and electronic, mechanical or electric recordings or representations of any kind (including, without limitation, tapes, cassettes, discs and recordings), including the file and file cover, and copies of non-paper information storage means such as tape, film, and computer memory device in readable form.

3. "Communications" shall be construed in its broadest sense and shall mean directly or indirectly describing, setting forth, discussing, mentioning, commenting upon, supporting, contradicting, or referring to the subject or topic in question, either in whole or in part, whether by correspondence, telephone, meeting or any occasion of joint or mutual presence as well as the transfer of any document from one person to another.

4. The term "any and all documents" means every document or group of documents or communication as above defined known to you and every such document or communication which can be located or discovered by reasonably diligent efforts.

5. "Relating to" and "relate to" shall be construed in their broadest sense and shall mean directly or indirectly describing, setting forth, discussing, mentioning, commenting upon, supporting, contradicting, or referring to the subject or topic in question, either in whole or in part.

6. Where any request cannot be complied with in full, the request shall be deemed to require you to provide the reasons for such inability to comply. If a document, that is otherwise discoverable, is withheld by claiming that it is privileged or subject to protection of trial preparation material, make the claim expressly and describe the nature of the document, communication, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable the requesting party to assess the applicability of the privilege or protection.

7. Each request calls for not only documents in your possession, custody and control, but also for documents that are available to you upon reasonable inquiry or request, directed to any entity or individual that is an agent, representative, employee, or affiliate of yours.

8. The term "action" shall mean the above-styled case entitled: List Industries, Inc. v. Wells Fargo Bank, N.A., United States District Court for the Southern District of Florida CASE NO. 0:17-cv-61204-DPG.

9. The term "Assignors" shall mean Broward Custom Woodwork LLC f/k/a Broward Custom, LLC, List Hallowell Inc., L.I. Properties LLC, List Manufacturing, Inc., List Plymouth LLC, List Shared Services, Inc., Midwest Factory Hallowell, LLC, Herbert A. List Jr., Sheila List, Braden List, and Colin N. List.

10. As used in this request, the term "List," Plaintiff," means List Industries, Inc., including as assignee and exclusive legal and beneficial owner in and to all claims of each Assignor, and its subsidiaries, affiliates, and related entities, its predecessors and successors, and all of its officers, directors, members, employees, agents, representatives, attorneys and accountants.

11. As used in this request, "Complaint" shall mean the Amended Complaint filed by Plaintiff in this action.

12. As used in this request, the term "Wells Fargo" means Wells Fargo Bank, N.A., its subsidiaries, affiliates, and related entities, its predecessors and successors, and all of its officers, directors, members, employees, agents, representatives, attorneys and accountants.

13. As used in this request, the term "Sal" means Salvatore Ciaramitaro, his affiliates, agents, representatives, attorneys and accountants.

14. As used in this request, the term "List Maker Checks" means checks written by Sal from legitimate List bank accounts to third parties, as set forth in paragraph 8 of the Complaint.

15. As used in this request, the term "Stolen List Payee Checks" means checks "stole[n] and intercepted…[by Sal] after they were delivered by the makers to List and Assignors, as payees," as set forth in paragraph 8 of the Complaint.

16. As used in this request, the term "Checks" means the checks listed on Exhibit B to the Complaint that are at issue in this action, including List Maker Checks and Stolen List Payee Checks.

17. As used in this request, "List Accounts" shall mean the bank accounts of Plaintiff at issue in this action, including any accounts held by Broward Custom Woodwork LLC f/k/a Broward Custom, LLC, List Hallowell Inc., L.I. Properties LLC, List Manufacturing, Inc., List Plymouth LLC, List Shared Services, Inc., Midwest Factory Hallowell, LLC, Herbert A. List Jr., Sheila List, Braden List, and Colin N. List at Wells Fargo Bank, N.A. successor-by-merger to Wachovia Bank, N.A.

18. As used in this request, "LI Accounts" shall mean the account titled to L.I. Industries, Inc. with Wells Fargo ending 4723 and the account titled to L.I. Worldwide Industries, Inc. with Wells Fargo ending 6094.

19. "Transactional Databases" means any and all reconstructions that You have performed from banking transactions at issue in the Complaint, including any and all documents associated with or used during the reconstruction(s).

20. As used in this request, the term "You" "Your" means RSM US LLP, its subsidiaries, affiliates, and related entities, its predecessors and successors, and all of its officers, directors, members, employees, agents, representatives, attorneys and accountants.

21. Unless stated otherwise, the requests contained herein seek documents for the period of time between January 1, 2010 through May 16, 2017.

**EXHIBIT A**
**TOPICS**

1. Internal controls, policies and/or procedures that List Industries, Inc. including any Assignors ("List") had in place to prevent unauthorized transactions, diversion of checks, diversion of funds and/or embezzlement by employees during the period of January 1, 2010 through May 16, 2017;

2. Your audits of List period of January 1, 2010 through May 16, 2017;

3. Your audit work paper files for List during the period of January 1, 2010 through May 16, 2017;

4. Your permanent files for List during the period of January 1, 2010 through May 16, 2017;

5. Your customer contracts with List during the period of January 1, 2010 through May 16, 2017;

6. Your engagement letters for any and all engagements for List during the period of January 1, 2010 through May 16, 2017;

7. Management comment letters relating to List during the period of January 1, 2010 through May 16, 2017;

8. Management representation letters from List to You during the period of January 1, 2010 through May 16, 2017;

9. Any and all forensic investigations by You relating to List during the period of January 1, 2010 through May 16, 2017;

10. Any and all forensic investigations by You relating to Salvatore Ciaramitaro during the period of January 1, 2010 through May 16, 2017;;

11. Responsibility for review of monthly Wells Fargo bank account statements for, during the period of January 1, 2010 through May 16, 2017;

12. Assistance with List preparing an insurance claim to recover losses for the period of January 1, 2010 through present;

13. Communications between you and List during the period of January 1, 2010 through May 16, 2017;

14. Communications between you and Salvatore Ciaramitaro ("Sal") during the period of January 1, 2010 through May 16, 2017;

15. Communications between you and Thomas Piecuch during the period of January 1, 2010 through May 16, 2017;

16. Signing authority on List's bank accounts during the period of January 1, 2010 through May 16, 2017;

17. Supervision of Salvatore Ciaramitaro ("Sal") while an employee of List during the period of January 1, 2010 through May 16, 2017;

18. Responsibility and process for review of accounts payable and accounts receivable review for List the period of January 1, 2010 through May 16, 2017;

19. Reconciliation and monitoring of List's bank accounts during the period of January 1, 2010 through May 16, 2017;

20. Any settlements between You and List relating to losses by List during the period of January 1, 2010 through May 16, 2017;

21. Any insurance claim by You related to services provided by You to List during the period of January 1, 2010 through May 16, 2017;

22. Settlements and receipt of funds or other property by List from Sal's estate or curator, Wells Fargo and any other collateral sources including, but not limited to, auditors, insurance, BB&T, Bank of America, and Bank United;

23. Purported unauthorized transactions and diversion of funds or checks by Sal;

24. Means and methods of calculating the specific amount of damages allegedly sustained by List as a result of the alleged acts or omissions of Wells Fargo;

25. List's agreements/contracts with Wells Fargo relating to List's bank accounts with Wells Fargo;

26. Any Communications You had with Wells Fargo related to List's bank accounts and/or missing funds;

27. Any Communications You had with any third parties regarding purported unauthorized transactions and diversion of checks by anyone during the the period of January 1, 2010 through May 16, 2017;

28. Your reports, Communications and Documents with any law enforcement office or agency related to purported unauthorized transactions and diversion of checks by anyone during the period of January 1, 2010 through May 16, 2017;

29. List's insurance policies and/or coverage;

30. List's first notice or discovery that there was an issue regarding missing or stolen money by Sal or anyone from List;

8

31. The process by which List discovered the facts underlying its claims against Wells Fargo and any other individual or entity relating to unauthorized transactions, diversion of checks, diversion of funds and/or embezzlement during the period of January 1, 2010 through May 16, 2017 and any documents related thereto;

32. Any Communications, including demands to or claims presented against You in connection with List's losses related to purported unauthorized transactions and diversion of any funds during the period of January 1, 2010 through May 16, 2017 and any documents related thereto;

33. Any Communications, including demands to or claims presented against any entity in connection with List's losses related to purported unauthorized transactions and diversion of any funds during the period of January 1, 2010 through May 16, 2017 and any documents related thereto;

34. List's and/or any law enforcement office or agency's investigation of purported unauthorized diversion of checks or funds by Sal or anyone from List during the period of January 1, 2010 through May 16, 2017;

35. Analyses, charts, spreadsheets, databased, opinions and/or reports related to purported unauthorized diversion of checks or funds by Sal or anyone from List during the period of January 1, 2010 through May 16, 2017; and

36. Facts and documents relating to List's discovery of unauthorized transactions, diversion of checks, and/or embezzlement by Sal and anyone else during the period of January 1, 2010 through May 16, 2017.

# EXHIBIT B

## DOCUMENTS TO BE PRODUCED

1. Any and all audit reports prepared by You for List during the period of period of January 1, 2010 through May 16, 2017.

2. Any and all documents relating to audit reports by You for List during the period of period of January 1, 2010 through May 16, 2017.

3. Any and all audit work paper files for List during the period of January 1, 2010 through May 16, 2017.

4. Any and all permanent files for List during the period of January 1, 2010 through May 16, 2017.

5. Any and all customer contracts with List during the period of January 1, 2010 through May 16, 2017.

6. Any and all engagement letters between You and List for any and all engagements for List during the period of January 1, 2010 through May 16, 2017.

7. Any and all management comment letters relating to List during the period of January 1, 2010 through May 16, 2017.

8. Any and all management representation letters from List to You during the period of January 1, 2010 through May 16, 2017.

9. Any and all forensic investigations by You relating to List during the period of January 1, 2010 through May 16, 2017.

10. Any and all forensic investigations by You relating to Salvatore Ciaramitaro during the period of January 1, 2010 through May 16, 2017.

11. Any and all Documents relating to the responsibility for review of monthly Wells Fargo bank account statements for, during the period of January 1, 2010 through May 16, 2017.

12. Any and all Documents relating to preparing an insurance claim for List to recover losses for the period of January 1, 2010 through present.

13. Any and all Communications between you and List during the period of January 1, 2010 through May 16, 2017.

14. Communications between you and Salvatore Ciaramitaro ("Sal") during the period of January 1, 2010 through May 16, 2017.

15. Communications between you and Thomas Piecuch during the period of January 1, 2010 through May 16, 2017.

16. Any and all Documents relating to signing authority on List's bank accounts during the period of January 1, 2010 through May 16, 2017.

17. Any and all Documents relating to supervision of Sal while an employee of List during the period of January 1, 2010 through May 16, 2017.

18. Any and all Documents relating to the responsibility and process for review of accounts payable and accounts receivable review for List the period of January 1, 2010 through May 16, 2017.

19. Any and all Documents relating to reconciliation and monitoring of List's bank accounts during the period of January 1, 2010 through May 16, 2017.

20. Any and all Documents relating to any civil action, claim or demand that List initiated against You in any way related to the purportedly unauthorized transactions, diversion of checks, and/or embezzlement by anyone, including but not limited to Sal, from the List Accounts, including, without limitation, pleadings, deposition transcripts, written or recorded statements, correspondence, and settlement agreements.

21. Any and all Documents relating to settlements between You and List relating to losses by List during the period of January 1, 2010 through May 16, 2017.

22. Any and all Documents relating to any insurance claim by You related to services provided by You to List during the period of January 1, 2010 through May 16, 2017.

23. Any and all Documents relating to settlements and receipt of funds or other property by List from You, Sal's estate or curator, Wells Fargo and any other collateral sources including, but not limited to, auditors, insurance, BB&T, Bank of America, and Bank United.

24. Any and all Documents relating to purported unauthorized transactions and diversion of funds or checks by Sal.

25. Any and all Documents relating to the means and methods of calculating the specific amount of damages allegedly sustained by List as a result of the alleged acts or omissions of Wells Fargo

26. Any and all agreements/contracts between List and Wells Fargo relating to List's bank accounts with Wells Fargo.

27. Any and all Documents relating to Communications You had with Wells Fargo related to List's bank accounts and/or missing funds.

28. Any and all Documents relating to Communications You had with any third parties regarding purported unauthorized transactions and diversion of checks by anyone during the period of January 1, 2010 through May 16, 2017.

29. Any and all Documents relating to Your reports, communications and Documents with any law enforcement office or agency related to purported unauthorized transactions and diversion of checks by anyone during the period of January 1, 2010 through May 16, 2017.

30. Any and all Documents relating to List's first notice or discovery that there was an issue regarding missing or stolen money by Sal or anyone from List.

31. Any and all Documents relating to the process by which List discovered the facts underlying its claims against Wells Fargo and any other individual or entity relating to unauthorized transactions, diversion of checks, diversion of funds and/or embezzlement during the period of January 1, 2010 through May 16, 2017 and any Documents related thereto.

32. Any and all Documents relating to any Communications, including demands to or claims presented against You in connection with List's losses related to purported unauthorized transactions and diversion of any funds during the period of January 1, 2010 through May 16, 2017 and any Documents related thereto.

33. Analyses, charts, spreadsheets, databased, opinions and/or Reports related to purported unauthorized diversion of checks or funds by Sal or anyone from List during the period of January 1, 2010 through May 16, 2017.

34. Any and all Documents relating to insurance policies and/or insurance coverage available to cover alleged diversion of checks, and/or embezzlement by anyone, including but not limited to Sal, from the List Accounts, including but not limited to employee dishonesty coverage, employee theft coverage, and fidelity insurance or bond.

35. Any and all Documents concerning, evidencing or referring to Your Transactional Databases prepared, reconstructed, used and/or reviewed in the instant action.

36. Any and all Documents concerning or evidencing Your analysis of cash inflows and outflows of funds for the List Accounts and the LI Accounts.

37. Any and all expert reports that You have prepared at List's request or on List's behalf with respect to the relating to purportedly unauthorized transactions, diversion of Checks, and/or embezzlement by Sal from the List Accounts.